James **BOGET**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–00–00174–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 7, 2001.

Vincent D. Callahan, San Antonio, TX, for Appellant.

Enrico B. Valdez, Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting RICKHOFF, LÓPEZ and DUNCAN, Justices.

RICKHOFF, Justice.

Appellant James Boget was convicted upon jury verdict of criminal mischief ($500.00 to $1500.00), a Class A misdemeanor. *See* TEX .PEN.CODE ANN. § 28.03 (Vernon Supp.2000). The court assessed punishment at one year confinement and a $500.00 fine. The jail sentence was probated. In a single appellate issue, Boget asserts the trial court erred in failing to instruct the jury on the issue of self-defense. We reverse the judgment of the trial court and remand the cause for a new trial.

## FACTUAL BACKGROUND

Boget was charged with criminal mischief because he destroyed the windshield, rear window, and driver's side rear window of an automobile without the effective consent of the owner, Maria Palacios. After 11:00 p.m. on August 10, 1998, Palacios drove to the Bandera Oaks Apartments to pick up her teenage daughter. Palacios testified her daughter saw Palacios but did not want to leave. The daughter ran off, and Palacios admitted she chased her daughter with the vehicle. During the pursuit, the two were yelling at each other. Palacios parked the car, sent her son to speak with her daughter, and began honking the horn. While Palacios was waiting, Boget came and yelled at her in English, but she only understands Spanish. She described Boget as very angry, and he hit her windshield. She was afraid and attempted to leave. Palacios apparently began driving around the parking lot, stopped and let her children in the vehicle, and Boget broke the rear window and the rear driver's side window with a flashlight.

Other witnesses saw the latter part of the incident. One testified Boget was yelling at Palacios and telling her to stop, and the witness had heard Palacios honk three or four times. Another witness, Cris Ramos Jr., was in his apartment and heard, "squeaking noise from tires peeling out." His wife, Veronica, the apartment complex manager, was in contact with Boget by phone. Boget had the cellular phone used for the neighborhood watch. There had been reports of someone banging on doors in the complex, and Boget had been investigating. Cris went outside, saw Boget telling the driver to slow down, and saw

the already broken windshield. The vehicle sped around, and another woman jumped into the vehicle. Cris saw the vehicle peeling out and described the driving as reckless. Cris testified one of the women was using profanity and obscene hand gestures. Boget had been in front of the truck, but Cris was unsure if Boget was hit by the vehicle. After the second woman got in the vehicle, Boget again was in front of the vehicle, and the truck took off "like they're going to hit him." Veronica testified the driver was "driving the truck at him [Boget]."

Officer Lawrence Saiz was dispatched to Bandera Oaks, and he spoke with Boget. Boget told Saiz an intoxicated driver in a truck with a broken window had fled down Bandera Road. Saiz saw Boget was carrying a large heavy duty Mag-light metal flashlight. Saiz followed and stopped the vehicle, and he determined the driver was not intoxicated. Palacios's daughter told Saiz she was at Bandera Oaks without her mother's permission, and her mother went to pick her up. According to Palacios's daughter, a man approached, hit the vehicle, and said, "get the fuck off the property." Saiz returned to Bandera Oaks, and Boget explained he saw the truck driving around the complex, he approached the truck, and the truck took off. Boget said he was hit by the vehicle, flipped over the top of the truck into the bed, and started breaking the vehicle's windows. Saiz testified Boget had no visible injuries.

### SELF–DEFENSE

■ "[A] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX.PEN.CODE ANN. § 9.31(a) (Vernon Supp.2000). Under certain circumstances, a person may also use force in defense of a third person, See id. § 9.33 (Vernon 1994), and in defense of property. See id. §§ 9.41, 9.43. Self-defense is a justification excluding criminal responsibility and as such is a defense. Luck v. State, 588 S.W.2d 371, 375 (Tex. Crim.App.1979); Kizart v. State, 811 S.W.2d 137, 139 (Tex.App.—Dallas 1991, no pet.). Once a defendant has produced sufficient evidence to raise the defense, the State is required to disprove the defense beyond a reasonable doubt. Kizart, 811 S.W.2d at 139; Hunt v. State, 779 S.W.2d 926, 927 (Tex.App.—Corpus Christi 1989, pet. ref'd); Walls v. State, 744 S.W.2d 671, 674 (Tex.App.—San Antonio 1988, no pet.).

■ Boget did not testify, but a defendant need not testify in order to raise the issue of self-defense. Shelvin v. State, 884 S.W.2d 874, 878 (Tex.App.—Austin 1994, pet. ref'd). Self-defense may be raised by the testimony of other witnesses describing the circumstances of the alleged offense. See Smith v. State, 676 S.W.2d 584, 585–87 (Tex.Crim.App.1984).

■ A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence, regardless of whether the proof is strong and unimpeached, or feeble and contradicted, even if the trial court is of the opinion the testimony is not entitled to belief. See Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim.App.1987); Booth v. State, 679 S.W.2d 498, 500 (Tex.Crim.App.1984). If a defensive theory is raised, and the trial court is timely and properly requested to instruct the jury on the theory, the trial court must instruct the jury on the raised defensive theory. Booth, 679 S.W.2d at 500. The jury alone has the responsibility to decide whether to accept or reject a properly raised defensive theory. Id.

The State argues self-defense is only available in cases where the defendant is charged with an offense involving the use

of force against another, citing *Johnson v. State*, 650 S.W.2d 414 (Tex.Crim.App. 1983). We agree self-defense arises out of the use of force against another. We believe a jury could find Boget was using force against another. *Johnson* is clearly distinguishable from Boget's case. Johnson was charged with unlawfully carrying a handgun. *See id.* at 415. Johnson was not entitled to an instruction of self-defense because he was not charged with an offense involving the use of force against another. *See id.* at 416. Johnson did not use force at all, he merely possessed a firearm. Johnson's conduct is clearly distinguishable from Boget's conduct. Boget was actually using force against another who happened to be inside a vehicle.

■ Neither *Johnson* nor any case our research revealed holds, as the State argues, self-defense is available only in prosecutions for crimes against persons and is not available in prosecutions for property crimes. Protection of persons and property are justifications which exclude criminal responsibility. *See generally* TEX.PEN. CODE ANN. Ch. 9 (Vernon 1994 & Supp. 2000). Justifications are contained in Title 2 of the Penal Code titled "General Principals of Criminal Responsibility." These general principals apply to all types of criminal responsibility. We see no basis in the code to limit self-defense principals to only those cases where the defendant is charged with a crime against a person. The right to protect oneself, others, and property does not depend on the State's decision to charge one particular offense or another.

■ Boget is charged with damaging property. The property may well have been damaged in the justified use of force against another because Boget raised a fact issue concerning self-defense. Boget cannot be precluded from asserting his justification because his attacker was safe-ly within a vehicle. The evidence in this case raises the issue of use of force because Boget struck a vehicle containing a person who may have been attempting to run over him. Admittedly, the force used failed to reach Palacios, and Boget was charged with criminal mischief because he damaged the vehicle. Nevertheless, these facts do not negate the possibility he was using force against another to defend himself.

## HARM ANALYSIS

■ Because Boget requested an instruction, the error was preserved at trial, and Boget must show "some harm" from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The burden of proof is on the defendant alleging charge error to show actual harm, not mere theoretical or potential harm. *See Abdnor v.. State*, 871 S.W.2d 726, 732 (Tex. Crim.App.1994). In determining the existence of some harm under *Almanza*, we examine any relevant information on the record, including the nature of the error, the entire charge, the state of the evidence, and the arguments of counsel. *See Johnson v. State*, 981 S.W.2d 759, 762 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd).

■ The trier of fact has sole responsibility to decide whether to accept or reject a defensive theory. *Booth v. State*, 679 S.W.2d 498, 500 (Tex.Crim.App.1984). Here the jury was not instructed on a justification which would have required an acquittal if the factual issues were resolved in Boget's favor. To acquit, the jury only needed to a find reasonable doubt as to whether Boget's actions were justified. *See Shelvin v. State*, 884 S.W.2d 874, 878 (Tex.App.—Austin 1994, pet. ref'd); *Walls v. State*, 744 S.W.2d 671, 674 (Tex.App.— San Antonio 1988, no pet.). Because it would be reasonable for a jury to find

Boget was defending himself by striking the vehicle aimed at him, Boget was denied the opportunity to have the jury fulfill its role as the fact-finder where conflicting evidence raised a fact question. The error was harmful. Boget's sole appellate issue is sustained.

The judgment of the trial court is reversed and the cause remanded for a new trial.